Gundlah v. Pallito, No. 180-3-09 Wncv (Crawford, J., Mar. 18, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
WASHINGTON COUNTY

| | | |
|---|---|---|
| CHARLES GUNDLAH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 180-3-09 Wncv |
| | ) | |
| ANDREW PALLITO, | ) | |
| Defendant. | ) | |

**Decision re: Motion to Set Trial (MPR #2)**

Plaintiff Charles Gundlah is a Vermont prisoner who was sent to Florida for confinement pursuant to the Interstate Corrections Compact. He claims that the Florida Department of Corrections (Florida DOC) is refusing to serve him kosher meals in violation of his rights under the federal and Vermont constitutions, the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc-1–2000cc-5, and 28 V.S.A. § 803 (exercise of religious beliefs). The record does not indicate whether Mr. Gundlah grieved this matter to the Florida DOC, but he has grieved it to the Vermont DOC. The Vermont DOC has consistently denied relief, ruling that Mr. Gundlah should pursue this matter with the Florida DOC, not with the Vermont DOC. The immediate question is not whether Mr. Gundlah has a right to kosher meals in Florida, but whether that is an issue for the Vermont DOC or the Florida DOC to resolve. Both parties have briefed this question of law.[1]

According to the parties, the Florida DOC has a policy against kosher meals based on security and economic interests. The policy has withstood litigation thus far. See generally *Linehan v. Crosby*, No. 4:06-cv-00225-MP-WCS, 2008 WL 3889604 (N.D.Fla. Aug. 20, 2008), aff'd No. 08-15780, 2009 WL 3042038 (11th Cir. Sept. 24, 2009) (per curiam). Plaintiff's claim is that he should have access to kosher meals despite the policy against them in Florida because, he alleges, he would have access to them if he were lodged at a Vermont facility.

Vermont and Florida are signatories to the Interstate Corrections Compact. 28 V.S.A. §§ 1601–1621; Fla. Stat. Ann. §§ 941.55–941.57. The purpose of the Compact is to facilitate signatory states' cooperation in the "confinement, treatment and rehabilitation of offenders with the most economical use of human and material resources." 28 V.S.A. § 1601. That is, the Compact is intended to make it easier and more efficient for a "sending" state to send its own prisoners to a "receiving" state for imprisonment. The Compact achieves this purpose primarily by

---

[1] Plaintiff filed this case under Rule 75. Rule 75 actions generally are governed by the Rules of Civil Procedure, V.R.C.P. 75(b). In that regard, the parties' filings are unusual. Plaintiff filed first, ostensibly requesting that the court set the matter for trial, but likening the posture of the motion to a Rule 12(b)(6) motion. Plaintiff added that summary judgment would be appropriate if Defendant accepted that the facts are undisputed. Defendant briefed the matter solely as a legal issue, not attempting to establish undisputed or disputed facts. In all events, the record is clear that the parties' intention was to put the threshold legal issue in this case—whether Plaintiff may take up his claim against the Vermont DOC rather than the Florida DOC—before the court. Though the different procedural standards would not affect the outcome of the court's analysis, the court will apply Rule 12(b)(6) standards in this situation.

standardizing the terms of the relationship between party states when they contract for the interstate transfer of inmates. The Compact is to be "liberally construed" to achieve this purpose, 28 V.S.A. § 1610, and the commissioner of corrections is empowered "to do all things necessary or incidental to the carrying out of the compact in every particular," *id*. § 1621.

The controversy in this case arises out of language in one provision of the Compact that, out of context, may appear to be contradictory. Section 1604(e) provides,

> All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state.

28 V.S.A. § 1604(e). Emphasizing the second sentence of § 1604(e), Mr. Gundlah argues that because he would have a legal right to kosher meals in Vermont, he has that right while incarcerated in Florida. He faults the Vermont DOC for not providing kosher meals in Florida or ensuring that the Florida DOC does so. The State emphasizes the first sentence of § 1604(e), arguing that Mr. Gundlah, under the Compact, is to be treated the same as other Florida inmates, to whom kosher meals apparently are not available. If Mr. Gundlah wants to the test the law of Florida on this issue, argues the State, he should address the matter with the Florida DOC, the only entity with direct authority over the conditions of confinement in Florida.

The Vermont Supreme Court addressed these two provisions of § 1604(e) in *Daye v. State*, 171 Vt. 475, 479 (2000). In *Daye*, a prisoner advocacy organization argued, in part, that Vermont prisoners lodged at a Virginia facility had a right, in Virginia, to the more generous Vermont visiting policy. *Id*. at 481. The Court ruled, as has nearly every court that has addressed this general topic, that "transferred inmates are subject to the disciplinary authority and rules of the receiving state," regardless of the "legal rights" provision in § 1604(e). *Daye*, 171 Vt. at 481.

Mr. Gundlah attempts to distinguish this case from *Daye* by emphasizing that this case is based on a "legal right" (free exercise of religious beliefs) rather than a mere correctional policy, such as a rule about grooming. This is a false distinction, however. Section 1604(e) is not predicated on a dichotomy between policies and rights.

The language of the Compact reflects that an inmate in an out-of-state prison generally is subject to the law of the receiving state except with regard to certain fundamental matters. The sending state, for example, retains jurisdiction over the out-of-state prisoner and control over issues such as removal from the receiving state and matters related to probation, parole, and discharge. 28 V.S.A. § 1604(c). The receiving state exercises primary supervision over the transferred inmate on day-to-day matters. The Compact ensures that the receiving state will treat the inmate the same as other inmates in the facility, *id*. § 1604(e), and provide regular reports to the sending state on transferred inmates' conduct, *id*. § 1604(d). This relationship ensures that the sending state retains control over the prisoner's custody and sentence, while relieving the sending state of

2

responsibility for day-to-day supervision. One can reasonably presume that if either the sending state or the receiving state were charged with the task of replicating the prison experience of the sending state in the receiving state that the Compact would largely fail to achieve its purpose of making this process easier and more efficient.

The terms of the 1978 contract between Vermont and Florida bear out this interpretation of the Compact. The contract makes clear that the receiving state is intended to supervise out-of-state inmates according to its own law, not that of the sending state. Two provisions of the contract are central in this regard. Section 11 provides:

> It shall be the responsibility of the receiving state to confine inmates from a sending state; to give them care and treatment, including the furnishing or subsistence and all necessary medical and hospital services and supplies; to provide for their physical needs; to make available to them the programs of training and treatment which are consistent with their individual needs; to retain them in a safe custody; to supervise them; to maintain proper discipline and control; to make certain that they receive no special privileges and that the sentences and orders of the committing courts in the sending state are faithfully executed.

Section 14 provides:

> Inmates while in the custody of the receiving state shall be subject to all the provisions of the law and regulations applicable to persons committed for violations of law of the receiving state not inconsistent with the sentence imposed.

Mr. Gundlah's interpretation of 28 V.S.A. § 1604(e) would destroy the efficiencies of this relationship by requiring the Vermont DOC to continue day-to-day supervision of out-of-state inmates as though they were in-state, or by requiring the Vermont DOC to somehow ensure that the Florida DOC does the same, at least with regard to any conditions of confinement that can be said to be affected by a "legal right," whatever its source.

It may help to recall that Vermont and Florida are sovereign states. Ordinarily, a Vermont resident who travels to Florida, while there, is subject to Florida constitutional and statutory law, not Vermont's. Neither Vermont nor the Vermont DOC has any authority over the Florida DOC's facilities in Florida, and neither the Compact nor the contract implies any such compromise in the sovereignty of the two states. It should not be surprising that a Vermont prisoner who is sent to Florida generally will be subject to Florida law. While that prisoner may well prefer the benefits of Vermont law or the prison experience in Vermont, the authority of the Vermont DOC to send prisoners to out-of-state facilities is well established and does not depend on the Compact. See *Daye v. State*, 171 Vt. 475, 479 (2000) (citing 28 V.S.A. §§ 102(b)(5), 102(c)(17), 701(b)).

While the primary purpose of the Compact is to facilitate the interstate transfer of prisoners, certain provisions of the Compact are intended to protect the out-of-state prisoner. For example, out-of-state inmates may be released only in the sending state unless the inmate agrees

otherwise. 28 V.S.A. § 1604(g). The out-of-state inmate has the right to benefit from in-state actions or proceedings affecting inmate obligations or status changes. *Id*. § 1604(h). The Compact may not be construed to restrict visitation policies. *Id*. § 1604(i). These and other similar provisions of the Compact help to define the relationship between the party states in relation to the inmate, but they are not intended to undermine the fundamental relationship between the states. The reference to "legal rights" in § 2604(e) appears to relate primarily to whatever rights the out-of-state inmate may have vis-à-vis the sending state's retained jurisdiction over the inmate, not the receiving state's.

Though Mr. Gundlah's asserted right to the free exercise of religion by eating kosher meals has constitutional and statutory dimensions, a dispute over the meals available in Florida facilities remains a dispute over the conditions of confinement there. That is a matter to be sorted out by the Florida DOC according to its policies and the requirements of Florida law. It is not the responsibility of the Vermont DOC, which has no authority to resolve the matter in Mr. Gundlah's favor.

Mr. Gundlah has not cited, and the court has not found, any authority that suggests a different outcome on this issue.

Mr. Gundlah is not entitled to Rule 75 relief.

## Order

For the foregoing reasons, the complaint for review of governmental action is dismissed.

Dated at Montpelier, Vermont this _____ day of March 2010.

_____
Geoffrey W. Crawford, Presiding Judge